**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

LEONARD MICHAEL SAVAGE, #132-625  :

      Plaintiff                       :

      v.                            : CIVIL ACTION NO. JKB-16-1219

JEFFREY R. GAHLER, Sheriff         :

      Defendant                   :

### MEMORANDUM

Leonard Michael Savage, presently detained at the Harford County Detention Center ("HCDC"), filed a civil rights action pursuant to 42 U.S.C. § 1983 seeking injunctive relief. After several allegations were examined and dismissed, the case has proceeded against Harford County Sheriff Jeffrey R. Gahler solely to determine whether Savage's outgoing legal mail is copied and sent to the State's Attorney.[1] Memorandum of September 13, 2016, ECF 30.

Gahler has filed a dispositive motion (ECF No. 17) that is opposed by Savage. (ECF 25 and 26).[2] No hearing is needed to resolve this case. *See* Local Rule 105.6 (D. Md. 2016). For reasons discussed below, Gahler's motion, construed as a motion for summary judgment, shall be granted and Savage's request for injunctive relief shall be denied.

### Standard of Review

Gahler's motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this

---

[1] Under Maryland law, the sheriff of a county "shall keep safely" in a local correctional facility "each individual committed by lawful authority to the custody of the sheriff until the individual is discharged by due course of law." Md. Code Ann., Corr. Serv. Art. § 11-201(a). The daily administration of the Harford County Detention Center is assigned to Chief Deputy Colonel Steven Bodway. *See* http://harfordsheriff.org/about/chief-deputy-warden/.

[2] Savage's "Motion to Exclude/Strike Defendant's Exhibit 3" (ECF 25) is denied, but the information provided in support of his motion shall be considered, together with ECF 26, as an opposition response to Gahler's dispositive motion.

manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher v. Md. Dept. of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010).

2

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action" and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, Civ. No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment

on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'"  *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted).  A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment."  *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'"  *Harrods,* 302 F.3d at 244 (citations omitted).  But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.  Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit.  *Id.* (internal citations omitted).  According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'"  *Id.* at 244-45 (internal citations omitted).

Plaintiff has not filed an affidavit under Rule 56(d).  Thus, the Court is satisfied that it is appropriate to address the defendant's motion as one for summary judgment.

Summary judgment is governed by Rule 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:  By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).  "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  Because plaintiff is self-represented, his submissions are liberally construed.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

**Plaintiff's Allegations**

In his initial Complaint, Savage stated that "Harford County Detention Center controls all legal mail, incoming and outgoing…" and that he arranges for his legal mail to be "smuggled out" to ensure it is not lost or subjected to tampering.  (ECF 1 at 1.)  He supports this allegation with an affidavit by fellow detainee Donald G. Rembold, who claims his (Rembold's) outgoing mail and requests for legal research were given to the prosecutor.  (ECF 1-7, Rembold Affidavit, ¶¶ 2-3.)  Detainee Jeffrey Wayne Lycliter also has submitted an affidavit, stating his "actual court documents…has [sic] been altered, manufactured…the changes in part were made due too [sic] …the opening and tamper[ing] with my mail."  (ECF 1-8, Lycliter Affidavit, ¶ 2.)

Savage further supports his claim by implying that his requests for docket entries sent to the Clerk of Court in Harford County were ignored because they never were received.[3]  (ECF 26 at pp. 2-3.)  He provides a copy of a Motion to Compel Discovery sent to the prosecutor which received no response.  (ECF 20-1.)  Savage also provides a copy of a letter to him from his trial counsel stating:

> **DO NOT use the Detention Center's telephone to discuss the case, write letters to anyone regarding your case, or discuss the case with any visitors other than representatives of my Office. Your telephone calls, mail and visitor logs are being monitored by Law Enforcement.  Anything you say will be used against you.**

(ECF 26-2) (emphasis and bold in original).   Savage infers that Gahler has known of the defective mail policy since soon after taking office in 2013 and that Gahler approved a revision of the HCDC rules and regulations on July 27, 2015.  (ECF 26-1 at 6, referencing ECF 25-1 at 1, noted by Savage as "Exhibit #2.")

---

[3] The docket in the instant case was sent to Savage upon request on two occasions.  *See* ECF Entries of August 8 and August 26, 2016.

Savage also references changes to inmate mail policy made effective August 1, 2016:

> Outgoing Inmate Mail
>
> Outgoing mail may be sealed by the inmate and may be opened and inspected.
>
> Personnel may open and inspect the mail if there is a potential threat to the order and security of the facility or if the mail is being used in furtherance of illegal activity.
>
>> Attorney-client privileged mail shall not be opened.
>>
>> If requested by the investigating agency, the contents of the outgoing mail shall be photocopied and forwarded to requesting personnel.

(ECF 25-1 at p. 2, referenced as Exhibit #3.)  Savage notes that on one occasion, an item of legal mail was returned to him with postage due, but asserts that the postage was proper at the time he submitted the envelope.  (ECF 25-2 at pp. 1, 5.)  The item was re-mailed one day later.  (ECF 25-2 at p. 1.)  He indicates he never received a copy of the inmate rules and, thus, did not comply with any administrative exhaustion requirements.  (ECF 26 at p. 3, ECF 26-1 at p. 9.)

### Defendant's Arguments

Gahler raises four defenses to suit: sovereign immunity; failure to complete administrative exhaustion; a lack of evidence; and the failure to demonstrate actual injury caused by HCDC's mail policy.  (ECF No. 17-1.)  Gahler also provides a copy of the Operations Manual outlining mail procedures, made effective December 20, 2013, under previous Sheriff L. Jesse Bane.[4]  The policy provides, in part,

> The Harford County Detention Center shall ensure the right of inmates to have unlimited access to courts and address uncensored, sealed

---

[4] As noted above, Gahler approved a revision of the Harford County Detention Center rules and regulations on July 27, 2015.  (ECF 26-1 at 6, referencing ECF 25-1 at 1, noted by Savage as "Exhibit #2.")

correspondence to persons and organizations including courts, counsel, facility officials, government officials, administrators of grievance systems, and members of the parole authority. Inmates seeking judicial or administrative redress shall not be subject to reprisals or penalties as a consequence.

The right of inmates for uncensored correspondence with attorneys and their representatives shall be ensured by the facility. Incoming mail to inmates from courts, counsel, officials of the facility, government officials, administrators of grievance systems, and members of the parole authority shall be opened only to inspect for contraband in the presence of the inmate, unless waived in writing.

There is no limitation on the volume of lawful mail including letters, packages, and publications which an inmate may send or receive, or on the length, language or content except when there is convincing evidence to justify the limitation for reasons of public safety, or facility order and security.

Incoming and outgoing letters shall not be held for more than twenty-four hours, excluding holidays and weekends. Incoming and outgoing packages shall not be held for more than forty-eight hours, excluding holidays and weekends. Incoming mail shall be opened and inspected for contraband, but not censored. Letters will not be read or rejected, except when a reasonable belief exists that there is a threat to facility order or security, or the letters are being used in the furtherance of illegal activity.

\*\*\*

PROCEDURE a. General Mail Procedures

\*\*\*

6.    Any confiscated contraband being used for the furtherance of illegal activity shall be reported to the Support Services Commander.

i.    The confiscating staff member shall document the confiscation on an Incident Report (DC-316) and initiate chain of custody documentation.

\*\*\*

PROCEDURE b. Incoming Inmate Mail

1. All incoming mail shall be opened and inspected by a designated staff member to intercept cash, checks, money orders, food, clothing articles,

sexually explicit photographs or printed material, contraband, and writing materials (stamps, envelopes, and blank writing paper).

i.      Writing materials are available via the inmate Commissary and indigent inmate program.
ii.     All other items including, but not limited to computer-generated, typed, or hand-written correspondence, greeting cards, religious materials, pamphlets, etc. shall be forwarded to the inmate after inspection and interception of prohibited items and contraband.

\*\*\*

3.i.     Legal mail shall be forwarded to an inmate even if the inmate's identification number is not documented on the envelope.

4.   Incoming mail shall not be rejected unless there is reasonable belief the contents are a threat to the order and security of the facility, or that the mail is being used in the furtherance of illegal activity.

i.      If the inspecting staff member rejects and confiscates mail, the inmate shall be notified.
ii.     The staff member shall document the rejection by completing an Incident Report (DC-316) and initiating chain of custody documentation.
iii.    The rejected mail, Incident Report (DC-316) and chain of custody documentation shall be forwarded to the Support Services Commander.
iv.     The inspecting staff member shall complete and forward an Inmate Property Receipt (DC-912) to the inmate.
v.      The arresting or investigating agency may be notified by the Support Services Commander of the suspected illegal activity.
vi.     The Warden or designee may waive notification if it is determined that notification of the inmate may further threaten the order and security of the facility, or compromise any investigation.

5.   After inspection, the correspondence shall be stamped, initialed and dated by the inspecting staff member.

6. All mail addressed from courts, counsel, administration, government officials, administrators of grievance system, parole authority or other legal correspondence shall be opened in the presence of the inmate, and shall not be stamped for inspection.

\*\*\*

PROCEDURE  e.  Outgoing Inmate Mail

1.   Outgoing mail may be sealed by the inmate and *may be opened and inspected.*

2.   *Personnel may open and inspect the mail if there is a potential threat to the order and security of the facility or if tire mail is being used in furtherance of illegal activity and the inspecting personnel shall document the opening on the Intelligence Log.*

i.   Attorney-client privileged mail shall not be opened.
ii.   If requested by the investigating agency, the contents of the outgoing mail shall be photocopied and forwarded to requesting personnel.

(ECF 17-5 at pp. 1-3.)

## Discussion

1.   Sovereign Immunity

Sheriff Gahler first argues that as a State constitutional officer,[5] he is entitled to sovereign immunity under the Eleventh Amendment.  ECF 17-1 at p. 2.  State agencies and departments are not "persons" within the meaning of 42 U.S.C. § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989).  Further, under the Eleventh Amendment to the United States Constitution, a state, its agencies, and its departments have sovereign immunity from suit in federal court, in the absence of consent.  *See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984).  This bar "exists whether the relief sought is legal or equitable." *Papasan v. Allain*, 478 U.S. 265, 276 (1986) (citing *Pennhurst*, 465 at 100-01).  Maryland has not waived sovereign immunity under the Eleventh Amendment for itself or its agencies and departments.

However, the Eleventh Amendment "permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S.

---

[5] Maryland law provides that a sheriff is a State official.  *See* Md. Const. Art. IV § 44; *see also Rucker v. Harford County,* 316 Md. 275 (1989); *Kline v. Fuller,* 56 Md. App. 275 (1983) (sheriff is a State official).

431, 437 (2004) (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)).  By filing suit, Savage is not

seeking damages, but solely requests prospective injunctive relief.  The defense of sovereign

immunity does not apply in this case.

      2.      Exhaustion of Administrative Remedies

Gahler raises the affirmative defense of non-exhaustion and asserts Savage's claim was

not properly presented through the administrative remedy procedure and must be dismissed

pursuant to 42 U.S.C. § 1997e.  (ECF 17-1 at pp. 2-3.)  The Prisoner Litigation Reform Act

provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

As a detainee confined in a jail, Savage is subject to the strict requirements of the

exhaustion provisions.  It is of no consequence that he is aggrieved by a single occurrence, as

opposed to a general conditions-of-confinement claim.  *See Porter v. Nussle*, 534 U.S. 516, 528

(2002) (no distinction is made with respect to exhaustion requirement between suits alleging

unconstitutional conditions and suits alleging unconstitutional conduct).  Exhaustion is also

required even though the relief sought may not be attainable through resort to the administrative

remedy procedure.  *See Booth v. Churner*, 532 U.S. 731, 741 (2001).  A claim which has not

been exhausted may not be considered by this court.  *See Jones v. Bock*, 549 U.S. 199, 220

(2007).

Administrative remedies must, however, be available to the prisoner and this court is

"obligated to ensure that any defects in administrative exhaustion were not procured from the

action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Ordinarily, a prisoner must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 729 (4th Cir. 2008); *see Langford v. Couch,* 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he PLRA amendment made clear that exhaustion is now mandatory."). A prisoner need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross v. Blake*, ____ U.S. ____, 136 S. Ct. 1850 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id.* at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id.* at 1856-57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 1855. The Fourth Circuit addressed the meaning of "available" remedies in *Moore v. Bennette, supra*, stating, 517 F.3d at 725:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v.Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

More recently, in *Ross*, the Supreme Court stated that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). Thus, an inmate must complete the prison's

internal appeals process before bringing suit.  *Chase v. Peay*, 286 F. Supp. 2d 523, 529-30 (4th Cir. 2003).

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and a prisoner's duty to exhaust available remedies "does not come into play."  *Ross*, 136 S. Ct. at 1859.  These are when the remedy operates as a "simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; the administrative scheme might be so "opaque" as to become "practically speaking, incapable of use"; and prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 1859-60.

It is not clear whether Savage failed to file an internal complaint regarding the alleged copying and sharing of his legal mail.  He claims, however, that he did not have access to the inmate handbook outlining administrative procedures.   (ECF 23 at pp. 1-2.)   Despite that circumstance, Savage indicates he sent a written grievance to the HCDC Warden.  (ECF 26-1 at p. 8.) In an abundance of caution, the court will not dismiss Savage's claim for lack of exhaustion, but will examine the merits of his claim.

3.      Lack of Evidence and Lack of Injury

Gahler argues Savage has failed to state that any particular item of his legal mail was improperly read and copied and, thus, cannot demonstrate "actual injury" caused by a denial of access to the courts.[6]  The right of access to the courts occurs only when an inmate is "hindered [in] his efforts to pursue a legal claim."  *Lewis v. Casey*, 518 U.S. 343, 355 (1996).  Savage's

---

[6] Rembold's affidavit contains attachments, showing that mail from a family member (possibly containing legal research) was returned. (ECF No. 3-2 at pp. 4-7.)  Gahler argues Rembold's "legal" mail that was allegedly copied was not addressed to legal entities, but in fact was information shared between Rembold and his wife.  (ECF 17-1 at pp. 4-5.)   The facts support this conclusion; however, the Rembold affidavit and other affidavits supported by Savage's fellow detainees do nothing to establish actual injury accruing to Savage and thus have no legal relevance here.

conclusional and speculative allegation that his legal mail is copied and given to the prosecutor is an insufficient premise for a claim of denial of access to the courts. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (inmate cannot rely on conclusional allegations, but must identify with specificity an actual injury resulting from official conduct). Reference to the procedures set forth in the Operations Manual provided by Gahler strongly suggests no violation occurred. Furthermore, Savage has failed to demonstrate he was hindered in any effort to assert a legal claim.

### Conclusion

Savage has not established actual injury and cannot prevail on a claim for prospective injunctive relief regarding HCDC policies affecting legal mail. A separate order follows.

Date: November 1, 2016                                        _____/s/_____
                                                                          James K. Bredar
                                                                          United States District Judge